### BUCKLEY v. DUMOND.
### SAME v. THERIOT.
### No. 1362.

Court of Appeal of Louisiana. First Circuit.
Oct. 3, 1934.

C. A. Blanchard, of Morgan City, for appellant.

Ellender & Ellender, of Houma, for appellee.

ELLIOTT, Judge.

This is a possessory action brought by Charles W. Buckley against Jean Pierre Dumond. His prayer is to be maintained and quieted in his alleged possession, as owner, of a large area of marsh land, described in his petition, and that said Dumond be enjoined and prohibited from entering and trapping on said land. He avers that Dumond has entered and is engaged in trapping thereon and that said trapping constitutes a disturbance of his possession.

A rule issued to Dumond at his instance to show cause why a preliminary injunction should not issue.

Dumond for answer denies plaintiff's averment of possession, as owner, admits his entry, and denies that it was wrongful. He sets up title to certain land described in his answer and avers real, actual possession, as owner, of the land described in the petition of the plaintiff. Defendant avers that his possession extends over and embraces all the land situated in the rear of his habitation, lying on Bayou Du Large and in between said bayou and Bayou De Isle; that Alidore Mahler, plaintiff's agent, has for the past several years continuously admitted and recognized his possession; and that plaintiff is thereby precluded and estopped from denying said fact.

A similar suit with like object and based on similar facts and concerning the same lands was filed by the plaintiff against John Theriot, 156 So. 790, No. 10528 on the docket of the district court. The defense of said Theriot being similar to that of Dumond, the two suits were consolidated for the purpose of trial. The minutes show the following trial agreement: "It was thereupon agreed between the attorneys for both sides that these cases be consolidated for the purpose of trial and shall be taken up at this time

786

and evidence both as to the rule for preliminary injunction and as to the merits, and the court shall have authority to render judgment on the rule and thereafter on the merits or upon both at one and the same time at its discretion." The note of testimony opens with a similar agreement.

The two cases were tried together. The district judge, giving written reasons in one opinion for his judgment in both cases, rendered judgment in favor of the plaintiff as prayed for in each case, separate judgments being rendered and signed. The defendants both have appealed. We find from the consolidated records that we can follow the course pursued in the lower court and deal with the two cases in one opinion.

■ Under defendants' denial, the burden of proof is upon the plaintiff in each case to show the possession necessary to support a possessory action. The land described in the petition in each case is low, wet, marsh land, covered with grass, not susceptible of cultivation nor of permanent habitation. It does not appear that any part of it has ever been fenced or otherwise inclosed. The land is chiefly valuable as trapping ground for the fur-bearing animals that propagate and make their home there. It has value as a hunting ground and as a range for cattle and hogs and possibly for minerals.

On the trial of the case against Jean Pierre Dumond, the plaintiff Buckley produced and offered in evidence in support of his alleged possession, as owner, duly recorded title to the N. E. ¼ of N. E. ¼ and S. ½ of the N. E. ¼ and S. E. ¼ of section 24, all of section 25, the S. E. ¼ of the S. E. ¼ of section 26, the S. W. ¼ of the S. W. ¼ and the E. ½ of the S. W. ¼ and the E. ½ of section 35, all of section 36, all located in township 19 south, range 16 east, situated in the parish of Terrebonne.

The note of testimony contains an admission that the defendant Dumond purchased under date of March 21, 1918, lots 7 and 8, section 26, containing 75 acres, lying on both banks of Bayou Du Large, and the lower half of lots 5 and 6, section 26, containing 74 acres, all in township 19 south, range 16 east, situated in the parish of Terrebonne, and that Eleze Dumond has patent from the state of Louisiana, bearing date, January 14, 1934, covering the S. E. ¼ of the N. E. ¼ and the W. ½ of the S. E. ¼ of section 26, and patent from the state of date March 15, 1883, covering the N. E. ¼ of the S. E. ¼ of section

26, all in township 19 south, range 16 east, situated in the parish of Terrebonne.

■ The admission does not say whether the title admitted to exist in Jean Pierre Dumond had been recorded in the Conveyance Book or not, but the plaintiff having taken cognizance of his ownership by purchase and the date of same, we assume that his title was duly and timely recorded. Patents from the state do not have to be recorded.

The evidence shows that there is no conflict between the limits of the title produced by the plaintiff and the title admitted to exist in Jean Pierre and Eleze Dumond. The dispute is as to the fact of possession of the area of land lying in the rear of that called for by the Jean Pierre Dumond and Eleze Dumond titles along the left descending bank of Bayou Du Large and in between their title limits and Bayou De Isle. Plaintiff's title calls for this area, and the defendant Dumond has no title thereto. We estimate the acreage to be about 2,040 acres. That called for by the Jean Pierre and Eleze Dumond titles together is 300 acres. The Dumond possession up to their title limits is not in dispute.

■ "Possession is the detention or enjoyment of a thing, which we hold or exercise by ourselves, or by another who keeps or exercises it in our name." Civil Code, art. 3426. In acting on a question of possession and in determining what acts will constitute a taking and commencement of real, actual possession, such as is required by the Code of Practice, art. 49, the character of the land must be taken into account. Civil Code, art. 1924, provides: "What shall be considered a delivery of possession is determined by the rules of law, applicable to the situation and nature of the property."

In Chamberlain et al. v. Abadie, 48 La. Ann. 587, 19 So. 574, the court, in acting on a question of prescription and speaking of the acts necessary in order to commence a corporeal possession, used the following language, page 590 of 48 La. Ann., 19 So. 574, 575: "The corporeal possession necessary to support the prescription is governed by the use for which the land is destined. If it is for pasturage, the grazing of cattle upon it is an act of corporeal possession. From its nature it may prohibit an actual residence or cultivation. Timbered land may be inclosed, trees cut, roads run through it, and many other similar acts to show the intention to subject it to one's dominion."

South Louisiana Land Company v. Riggs Cypress Company, 119 La. 193, 43 So. 1003, was an action of slander of title in which possession is an essential element. In that case the land was a low, cypress swamp on which stood cypress timber. The land was not susceptible of cultivation nor habitation. The court said, in acting on a question of possession, page 199 of 119 La., 43 So. 1003, 1005: "There may be physical possession of swamp lands. The value of the land is in the trees. To cut them down and take them away requires considerable preparation and the use of different appliances. It may be that the mere cutting down of a few trees is not possession. It is different where operations are carried on with a view of pulling a number of trees, and when at every returning season work is done. The sound of the woodman's ax is heard; the stir of the hands; the swamp boat going up and down the small streams; its resounding whistle heard; all go towards denoting possession. Possession is a fact and each case depends upon its own facts." McHugh v. Albert Hanson Lumber Company, 129 La. 680, 56 So. 636, is to the same effect.

Plaintiff's title deraigns back for more than 30 years, through mesne and intervening conveyances, from the Board of Commissioners of the Atchafalaya Basin Levee District bearing date February 28, 1901, and the levee board acquired from the state. His title establishes his limits and claim, as owner, according to the governmental subdivisions called for by the acts.

■■ On February 28, 1927, Alidore Mahler, paying a valuable consideration for the privilege, leased the exclusive right to trap for fur-bearing animals on the land. His right being derived from the owner, his acts for the purpose of protecting his trapping rights may be regarded as the acts of the owner. • Trapping is only done during the two or three months forming the winter season. Mahler commenced actively and systematically to trap the land with the 1927–1928 season and has continued each trapping season since. His right to do so being based on the authority of the owner, his trapping business may be looked on as showing intention on the part of the owner to thereby take and commence the real, actual possession of the land. As his right was founded on a title, it was not necessary for him to pass over every part of the land in order to take and have actual possession of all that was called for by his title. Civil Code, arts. 3437 and 3498.

About two months before the present suit was filed, Mahler called on the defendants, Dumond and Theriot, and requested each of them not to trap on the land during the 1933–1934 season. Each refused and declared to him that they intended to and would continue to trap on the land, claiming the right to do so. Mahler then caused T. Baker Smith, civil engineer and surveyor, to run a line five chains within the outer limits of plaintiff's land next to the land, covered by defendants' titles, and erected warning signs three or four hundred feet apart, forbidding entrance on plaintiff's land for the purpose of trapping. These marks and signs were so conspicuous and so near together that everybody who passed that way was bound to see them. The defendants each saw the signs but disregarded them and entered and engaged in trapping on the area in question.

The defendant Dumond testified that he had been hunting and trapping on the land for over 40 years; that during the 1932–1933 season he trapped on the land and had been doing it every preceding season since trapping had become a recognized business. But it seems that the business has not been a recognized industry for more than 15 or 20 years last past. He further testified that Mahler and others employed by Mahler knew he was doing it and recognized his right to do so; that 30 years ago he constructed a canal across the land, extending from his back yard about two arpents from Bayou Du Large to Bayou Maple a distance of about 35 acres.

He speaks of Bayous Maple and Duplan as being in the rear of Bayou Du Large and says that Bayou Duplan is back from Bayou Du Large about 37 acres.

"Q. Then you claim all the land between Bayou Duplan and Bayou Du Large in the rear of your land according to your title? Is that correct?

"A. I claim it on possession according to my titles."

His testimony is that his possession is co-extensive with the length of his canal; that he has possessed the land for 30 years and that his possession has consisted of trapping and hunting. The bayou situation is not made clear. The testimony shows that there is another bayou in the rear of Bayou Du Large called Bayou De Isle, frequently referred to, and Dumond says that his canal enters Bayou De Isle; that about 15 years previous to the trial, he built a camp about two arpents from Bayou De Isle and has al-

ways trapped as far back as that bayou and considered the land as his own.

He testifies that his cattle have ranged over the land for more than 30 years; that formerly he had hogs, that ranged over it, but following the advent of trappers 5 or 6 years ago, working under authority of the plaintiff, his hogs disappeared.

We find that Dumond's claim to have had possession, as owner, of any part of the land, called for in plaintiff's title, is not well founded, because in the beginning and all along since then, in entering on the land, he did not have "the intention of possessing as owner," but hunting and looking after his cattle and hogs ranging thereon was his only purpose in view. Dumond is not to be regarded as an occupant of the land, but as indicating the importance of intent in a matter of taking possession, we refer to the Civil Code, arts. 3412 and 3413. Under these articles, occupancy is not a mode of acquiring the possession, except when it is retained by the acquirer with the intention of keeping it as his own property. And on the subject of possession, the Code, art. 3436, provides that: "To be able to acquire possession of property, two distinct things are requisite: 1. The intention of possessing as owner. 2. The corporeal possession of the thing." There must be a positive intention to take and commence a possession, as owner, in order that possession, as owner, may be created and commenced.

We copy from Donat's Civil Law, subject, Possession and Prescription, section 16, art. 2161, p. 850: "All that has been said in the preceding articles relates to the causes, which may give us the possession or the right to possess, and we are now to consider how one becomes possessor and the ways of entering upon a real and actual possession. Seeing the use of possession is to exercise the right of property, it implies three things: a just cause of possessing as master, the intention to possess in this quality and detention. This intention is not understood as that of a usurper or of a knavish possessor, who has the intention to possess as master, but of him, who is in reality master or who possesses so as to have just reason to believe that he is master. The detention is understood not only of him, who has the thing in his own hands or in his power, but likewise of him, who holds it by the intervention of other persons, such as a depositary, a tenant, a farmer. Without the intention there is no possession."

The defendant Dumond having no title, it results from the authorities that when his only purpose in entering on this land was to hunt, trap, or look after his stock, he cannot be regarded as having taken and commenced a possession as owner nor can he be regarded as a possessor.

As for the canal, which Dumond claims to have constructed, his evidence shows that it is about three feet wide in some places and four feet in others. It was evidently very shallow, because in places it has filled up, we take it, from natural processes, and it is not now open, except in places. It is in fact nothing more than a shallow ditch, opened by him through the soft marsh, not for the purpose of taking possession nor to indicate possession of the land over which it passes, as owner, but for the purpose of facilitating him in entering and traversing the marsh for the purpose of hunting and trapping. He admits in his testimony that his possession consisted of hunting and trapping.

As for the camp, which he constructed, it was a temporary structure, not for the purpose of taking or commencing possession of the land, as owner, but to obtain shelter while hunting and trapping at a distance from his house. He says of it himself that he constructed it to put his clothes in and get shelter when he went out into that part of the marsh.

As for his claim that he has trapped the land each season for years past, the evidence shows that since Mahler acquired the trapping rights from plaintiff, other trappers, acting under the authority of plaintiff's title, have each season trapped over this land without regard for his trapping. Dumond's trapping on this land was in our opinion a mere tolerance on part of the plaintiff. It is our conclusion that his claim to have possession, as owner, came to his mind after Mahler, acting under the authority of plaintiff's title, objected to his trapping, requested him to desist, and posted warnings for him to keep off the land.

The case Prevost's Heirs v. Johnson, 9 Mart. (O. S.) 123, is a complete denial of any possession on the part of Dumond, as owner of the land, described in the petition. In that case the court held: "When a person claims by possession alone, without showing any title, he must show an adverse possession by inclosures and his claim will not extend beyond such inclosures." In Ellis v. Prevost et al., 19 La. 251, a possessory ac-

789

tion, the court said, we copy from the syllabus: "The person claiming by possession alone, without showing any title, must show an adverse possession by inclosures, and his claim will not extend beyond." The dicta of these old cases is now the jurisprudence of this state in matters of possession. In Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, 651, the Supreme Court, referring to the word "boundaries" in the Civil Code, art. 3437, said: "The word 'boundaries,' in that article, means the limits or marks of inclosures if the possession be without title, or the boundaries or limits stated in the title deed if the possession be under a title."

Defendant denies that the plaintiff has the possession requisite to maintain a possessory action. The plaintiff has undisputed title to the land deraigning back for more than 30 years. His entry and trapping by Mahler was an act of possession, as owner, and served to take and commence a real, actual possession of this marsh land to the limits of his title. Civil Code, arts. 3437 and 3498. And the same business carried on each season since then continues his possession as owner. From the opinion of the judge a quo we copy as follows: "Under the law the owner of a legal title, having exercised sovereignty by subjecting the property to that use or service for which it is fitted, is regarded as having reduced it to possession and to have become the actual possessor thereof and entitled to maintain the possessory action."

In Ellis v. Prevost et al., 19 La. 251, we copy from the syllabus: "In a possessory action, the civil possession of the plaintiff, preceded by an actual and corporal detention of the thing, will suffice, as it allows him the benefit of the previous corporal possession of his author." This decision has been consistently followed and is now the settled jurisprudence of this state.

In Buras v. Salinovich et al., 154 La. 495, 97 So. 748, the court, in giving effect to article 3415 of the Civil Code, which provides, "But the proprietor of a tract of land may forbid any person from entering it for the purpose of hunting," held as follows, we copy from the syllabus: "Although a landowner does not literally own the wild beasts and birds on his land, he controls the right to enter upon his land for the purpose of hunting or trapping them, but such right is subject to the state conservation laws enacted under the police power."

The suit against Jean Pierre Dumond was in our opinion properly decided.

The suit against John Theriot is governed by the same considerations; involves the same body of land; charges Theriot with disturbing possession by trapping; and prays for the same kind of judgment against him.

Theriot denies plaintiff's alleged possession. Further answering, he alleges ownership in himself of a tract of land, described in his answer as, "That certain tract of land in T. 19, S. R. 16, E., Terrebonne Parish, Louisiana, fronting four and one-half arpents. more or less, on the left descending bank of Bayou Du Large by depth of survey, bounded above by the property of Maxiliere Bourg and below by the property of Charles DeHart"; that under the term, "by depth of survey," respondent and his authors in title took actual, corporeal, physical possession of said property herein above described to a depth in the rear of a small stream, known as Bayou De Isle; and that he has therefore been in said possession of 4½ arpents width on Bayou Du Large, bounded above by Maxiliere Bourg and below by Charles De Hart and in the rear by Bayou De Isle for a period of more than one year preceding the filing of the above numbered and entitled suit.

He alleges possession for more than 30 years; that the acts of physical, actual, corporeal possession, through which defendant and his authors in title have maintained their respective possessions, consist of digging and maintaining ditches, erecting fences, grazing cattle and hogs, and trapping said property; that plaintiff, through his agent, Alidore Mahler, has repeatedly recognized and admitted the rights and possession of your respondent and is now precluded and estopped from denying the same, which estoppel defendant specially pleads, and prays that plaintiff's demand be rejected.

The important facts in the case against Theriot are practically the same as in the case against Dumond, except that the area, called for by the title, which Theriot adduces, is not stated in the title. We understand from the evidence, however, that it is about 35 acres. His title contains the term "by depth of survey," which term he advances as his title to the possession of all the land between Bayou Du Large and Bayou De Isle, a distance said to be about 35 acres, and while the area is uncertain, it is undoubtedly upwards of 2,000 acres and would, if his claim were true, cover the land described in the petition of the plaintiff. It is the same land over which Dumond claims the right to trap.

The lower court in a carefully prepared opinion considered this term, "by depth of

survey," and gives it as his conclusion that Theriot's land is likely situated in a French or Spanish grant, and that such a vague and indefinite expanse must be limited and confined to the grant .in which the land is located and cannot without proof be considered as calling for an extent of land, which would conflict with the limits of adjoining lands, acquired from the United States and located and surveyed by surveyors, acting under the authority of the national government, as is the case with the limits called for by the title of the plaintiff. We agree with this conclusion and hold, as did the lower court, that under the evidence there is no conflict between plaintiff's limits and those of Theriot under the title which he adduced.

Theriot testifies that he has possession of the marsh, as owner, back to Bayou De Isle; that he acquired it by hunting, trapping, and raising hogs and cattle on it; that his grandfather used it in the same way before him etc.; and that for 25 years a canal has existed on the land, running back from his residence on Bayou Du Large to Bayou De Isle, which canal he uses for hunting and trapping.

Our conclusion is that Theriot in going on the land did not have any "intention of possessing as owner"; that he is therefore not a possessor and his trapping was a mere toleration on the part of the plaintiff. We feel satisfied that his claim to have possession did not exist until Mahler, acting under the authority of plaintiff's title, objected to his trapping, requested him to desist, and posted warnings for him to keep off the land.

Theriot, like Dumond, denies that plaintiff has the requisite possession to maintain a possessory action. We have stated that Mahler's entry, under the authority of plaintiff's title about five years previous to the institution of the present suit and his commencement to systematically trap the land, during each trapping season, constituted on the part of the plaintiff a taking and commencement of real, actual possession, as owner, sufficient to support a possessory action against Dumond, and the same entry and the conduct of the same business is sufficient for the purpose of maintaining a like suit against Theriot.

For the reasons stated, the judgment of the lower court in favor of the plaintiff Charles W. Buckley against Jean Pierre Dumond is affirmed. Defendant-appellant to pay the costs in both courts.